```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| LAWRENCE MELSON, | **DECISION AND ORDER** |
| | **Civil Case** |
| Movant, | **No. 1:13-cv-01190-MAT** |
| -vs- | **Criminal Case** |
| | **No. 1:09-cr-00327-MAT** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## INTRODUCTION

Proceeding pro se, Lawrence Melson ("Melson" or "Movant") has filed a Motion to Vacate the Sentence (Dkt #48) pursuant to 28 U.S.C. § 2255 ("Section 2255").

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about May 16, 2011, Melson pleaded guilty to Count I of the Indictment in 1:09CR00327-001, the instant case, charging a violation of 21 U.S.C. § 841(a)(1) (Possession With Intent to Distribute and Distribution of Cocaine Base), as well as Count I of the Superseding Indictment in 1:06CR00325-001, also charging a violation of 21 U.S.C. § 841(a)(1). On March 16, 2012, United States District Judge Richard J. Arcara sentenced Melson to 110 months' imprisonment on each conviction, those terms to be served concurrently and to be followed by concurrent 3-year terms of supervised release. Judgment was entered March 25, 2012. Melson did not pursue a direct appeal.

On November 25, 2013, Melson filed a pro se Motion to Vacate (Dkt #48) ("the Section 2255 Motion") alleging the following grounds for relief: (1) the indictment was constitutionally defective; (2) the Government violated his Fifth and Sixth Amendment rights by categorizing his prior felony conviction as a "violent felony"; and (3) trial counsel coerced him into pleading guilty to a defective indictment.

On March 24, 2014, Judge Arcara issued an Order (Dkt #50) indicating that the Section 2255 Motion appeared to be untimely under 28 U.S.C. § 2255(f), and directing Melson to complete a form entitled, "Petitioner's Response as to Why the Motion Is Not Time-Barred Under 28 U.S.C. § 2255." In response, on May 17, 2014, Melson submitted a pleading (Dkt #51) styled as a "Motion In Opposition Of Decision and Order Issued March 24, 2014."

On December 2, 2014, the Court (Arcara, D.J.) issued a text order directing Respondent to file a Response to the Court's March 24, 2014 Order (Dkt #50) and Melson's Response (Dkt #51). However, it does not appear from the docket that Respondent ever filed its Response.

In the meantime, Respondent filed, under seal, a Motion for Sentencing-Related Relief (Dkt #53) pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. On January 29, 2016, Judge Arcara issued an Order granting Respondent's motion and modifying the terms of imprisonment previously imposed on Melson to

"time served." The remaining components of Melson's sentences, including the terms of supervised release, remained as previously imposed. An Amended Judgment (Dkt #62) was entered on February 8, 2016.

On December 2, 2016, Melson's Section 2255 Motion was transferred to the undersigned. For the reasons set forth below, the Motion is dismissed as untimely.

## JURISDICTION

Article III, Section 2 of the United States Constitution limits the exercise of Federal judicial power to "cases" and "controversies." U.S. CONST. art. III, § 2. This Court has "an independent obligation to ensure that developments in the case have not rendered the [case] moot." United States v. Williams, 475 F.3d 468, 479 (2d Cir. 2007) (citation omitted).

A criminal case does not necessarily become moot when the inmate completes his sentence. United States v. Mercurris, 192 F.3d 290, 293 (2d Cir. 1999). Instead, "the case will remain a live case or controversy if there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction." Id. (quotation omitted). In cases, such as Melson's, involving a challenge to the criminal conviction itself, the Supreme Court "has been willing to presume the existence of" sufficient collateral consequences, or to "count collateral consequences that are remote and unlikely to occur." Id. (quotations and internal quotation

marks omitted). The Court, in keeping with Supreme Court precedent, will employ the presumption of collateral consequences sufficient to keep Melson's Section 2255 Motion a "live case or controversy," notwithstanding his completion of his sentence.

## DISCUSSION

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires, among other things, that Section 2255 motions be filed within one year from the following events (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

AEDPA does not explicitly state when a judgment of conviction becomes final for purposes of Section 2255. In Clay v. United States, 537 U.S. 522 (2003), the Supreme Court held that a conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for

a writ of certiorari, or when the time for filing a certiorari petition expires." Id. at 527.

In Mosher v. United States, 402 F.3d 116 (2d Cir. 2005), the Second Circuit confronted the issue, not yet decided by the Supreme Court, of when an unappealed Federal criminal judgment becomes final for purposes of Section 2255. As a matter of first impression, the Second Circuit held that, for purposes of Section 2255 motions, an unappealed Federal criminal judgment becomes final when the time for filing a direct appeal expires. Id. at 118.

Here, Melson was sentenced on March 16, 2012, and the judgment of conviction was entered on April 20, 2012. Because no appeal was taken from the conviction, the judgment became final for purposes of Section 2255(f)(1) on Friday, May 4, 2012, i.e., 14 days after entry of the judgment of conviction. See Mosher, 402 F.3d at 118. His motion to vacate accordingly was due May 4, 2013. Using the prison mailbox rule to calculate the filing date of Melson's Section 2255 Motion, the Court finds that it was filed at the earliest on November 25, 2013, the date he signed the motion, making the motion untimely by more than six months.

Melson does not contest the Court's finding that his motion is untimely under Section 2255(f)(1). Instead, he argues that he is entitled to the later start-date of the limitations period set forth in Section 2255(f)(3), because he is asserting an unspecified right that has been recognized by the Supreme Court and

made retroactively applicable on collateral review. However, the Court has reviewed his Section 2255 Motion and it does not rely on any such newly recognized, retroactively applicable Supreme Court caselaw. Melson's mere citation of several Supreme Court cases is insufficient to bring him within the ambit of Section 2255(f)(3).

Alternatively, Melson argues that he is entitled to equitable tolling of the statute of limitations. While equitable tolling is available for untimely motions to vacate filed pursuant to Section 2255, but its application "requires an extraordinary obstacle preventing the petitioner from complying with AEDPA's limitations period." Rosa v. United States, 785 F.3d 856, 861 n.5 (2d Cir. 2015) (citing Harper v. Ercole, 648 F.3d 132, 136–39 (2d Cir. 2011)). In addition, a defendant must demonstrate that he exercised "reasonable diligence" throughout the time period sought to be tolled. Valverde v. Stinson, 224 F.3d 129, 133-34 (2d Cir. 2000).

Melson asserts that he was delayed in preparing his motion because he was in transit from the holding facility to his assigned correctional facility for "many weeks" in which he did not have access to the law library, research materials, or inmate legal assistance. "[T]he usual problems inherent in being incarcerated do not justify equitable tolling." Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003); see also Amante v. Walker, 268 F.

Supp. 2d 154, 158 (E.D.N.Y. 2003) ("Generally, transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents do not by themselves qualify as extraordinary circumstances.") (citing Lindo v. Lefever, 193 F. Supp.2d 659, 663 (E.D.N.Y. 2002)). Here, Melson asserts that his time in transit spanned "many weeks." However, he did not file his motion until six months after the one-year limitations period expired. Melson clearly cannot, under these circumstances, demonstrate that he exercised reasonable diligence during the period he seeks to toll. See, e.g., Amante, 268 F. Supp.2d at 158 ("[State habeas] petitioner waited seven months after the transfer of the prison paralegal (and the resulting lack of access to his court papers) before filing his state court petition. Moreover, the actual filing of the petition did not occur as a result of any affirmative attempt on the part of petitioner to recover his papers from the prison paralegal or another source. Instead, petitioner merely waited until the prison paralegal completed his work on behalf of petitioner and sent it to him at the facility in which he was housed. Petitioner cannot, under these circumstances, demonstrate that he exercised reasonable diligence during the period he seeks to toll.").

As another basis for equitable tolling, Melson notes that his pre-sentence investigation report indicates that he has learning

disabilities. "[C]ourts in this circuit have repeatedly held that illiteracy, lack of English fluency, lack of prison law library resources or legal assistance, ignorance of the law, and a plaintiff's pro se status are not sufficient bases for equitable tolling." Keitt v. City of N.Y., No. 09 CIV. 5663 PKC DF, 2010 WL 3466175, at *10 (S.D.N.Y. Aug. 9, 2010), report and recommendation adopted, No. 09 CIV. 5663 PKC DCF, 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010) (collecting cases; citing Marte v. Brown, No. 09CIV.1036(RJS)(KNF), 2010 WL 1644271, at *3 (S.D.N.Y. Apr. 21, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that 'effectively prohibit [a] petitioner from pursing habeas relief.'") (quoting Armand v. Strack, No. 98 Civ. 6650(RDJ), 1999 WL 167720, at *5 (E.D.N.Y. Feb. 19, 1999) (alteration in original)); other citations omitted).

In sum, Melson's Section 2255 Motion is time-barred, and Melson has failed to show that AEDPA's one-year limitation period should be equitably tolled.

### CONCLUSION

For the reasons discussed above, the Court **dismisses** the Section 2255 motion (Dkt #48) as time-barred and illegible for equitable tolling.

"[W]hen a district court denies a § 2255 motion on procedural grounds, a certificate of appealability may issue only upon a

-8-

showing 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Moshier v. United States, 402 F.3d 116, 117-18 (2d Cir. 2005) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). Movant has failed to make the required showing, and therefore no certificate of appealability shall issue.

The Clerk of Court is directed to close this case and to send a copy of this Decision and Order to Movant.

**SO ORDERED.**

                                      **S/Michael A. Telesca**

                                    HON. MICHAEL A. TELESCA
                                  United States District Judge

Dated:    December 5, 2016
           Rochester, New York.